CHRISTOPHER J. CANNON, State Bar No. 88034
Sugarman & Cannon
44 Montgomery Street, Suite 2080
San Francisco, CA  94104
Telephone: (415) 362-6252
Facsimile:  (415) 677-9445

G. FRED METOS, State Bar No. 2250
10 West Broadway, Suite 650
Salt Lake City, Utah  84101
Telephone:  (801) 364-6474
Facsimile:  (801) 364-5014

Attorneys for GRAHAM TAYLOR
_____

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | POSITION OF DEFENDANT WITH RESPECT TO FACTORS DESCRIBED IN THE DRAFT PRE-SENTENCE REPORT |
| Plaintiff, | |
| v. | |
| DENNIS B. EVANSON, BRENT H. METCALF, STEPHEN F. PETERSEN, REED H. BARKER, WAYNE F. DEMEESTER, GRAHAM R. TAYLOR, | Case No.  2:05 CR-00805 TC |
| Defendants. | |

The defendant, Graham Taylor, by and through his attorneys of record, Christopher J. Cannon and G. Fred Metos, hereby makes the following objections and requests for additions to the draft pre-sentence report:

//

1

Paragraph 2

In paragraph 2, the Presentence Report indicates, "Sentencing was suspended to accommodate testimony being provided by this defendant in an unrelated case in the District of New York." This sentence appears to understate the level of Mr. Taylor's cooperation. Mr. Taylor has also provided cooperation in numerous other cases, and is expected to testify in yet another case in Tax Court in Chicago in the second week of October, and is also scheduled to meet with the Tax Division regarding another investigation in September 2009. The matter of Taylor's cooperation will be addressed in an additional sealed pleading.

Paragraph 16

In paragraph 16, the defense requests the language "Unbeknownst to Taylor" be added prior to the last sentence. The opinion letter itself indicates it is not applicable to third parties and the discovery indicates that Taylor did not know his opinion was being shown to third party investors by Evanson. To the contrary, when Taylor learned his opinion was being used in one instance, he inquired as to what was going on and objected. In another instance there is specific correspondence requesting authorization to use the letter.

Paragraph 27

In paragraph 27 of the Presentence Report, which now reads, "He then penned tax opinion letter<u>s</u>."(emphasis added), defendant requests a change to, "In the Evanson case, Taylor penned a tax opinion letter."

Paragraphs 30 and 33

Although the defense agreed these adjustments are appropriate in the initial calculation of the guidelines, we contend they should be offset under §2X1.1. Through Taylor's plea, and his cooperation, Taylor withdrew from the conspiracy prior to the completion of all the acts required

to accomplish its goal, i.e. the defense of the hybrid structure in an audit.  As a result of Taylor's early withdrawal, there should be an additional 3 level downward adjustment under § 2X.1

This § 2X1.1 adjustment is particularly appropriate due to the Taylor's borderline qualification for the sophisticated means and special skill adjustment; and the effective double counting of those adjustments under the facts of this case.  While Taylor was a skilled tax lawyer, and <u>if</u> his opinion letter had been used to promote a scheme, with his knowledge, or <u>had been used</u> in an audit to avoid IRS penalties, there would be a much stronger case for the duplicative sophisticated means and special skill adjustments.  In this case, however, the record is clear that Evanson came up with the concept of the hybrid corporation before he ever met Taylor, through his own independent research.  He had set up his various entities before ever meeting Taylor and he engaged in his tax shelter business without Taylor.  He approached Taylor for an opinion letter, which Taylor gave.  Taylor's opinion was confined to how a hybrid company should be viewed under U.S. Tax Law, did not address any particular transaction and was confined to the one hybrid described by Evanson in his independently created representation letter.  Moreover, that letter specifically stated: "This letter is intended for your sole benefit and may not be relied upon by or distributed to any other party, without our prior written consent."  Similarly, David Smith was an attorney and accountant who had literally written the tax management portfolio on derivative transactions.  Taylor wrote a hybrid opinion letter for Smith, which was similar to the opinion letter for Evanson.  Although there was certainly an expectation that the opinion letters would be used by Smith and Evanson, the letters were never so used, and Taylor's withdrawal from the conspiracy by his plea, debriefing and testimony prevented the use of the opinion letters.  Moreover the information in this case, and the factual basis for Taylor's conspiracy plea, was confined to participating in failing to report ownership of foreign assets.  Taylor did not admit, and

3

there is no evidence to support, his participation in Evanson and Smith's underlying activities.

Paragraph 31

As described above, the plea and the factual basis for the plea in this case were limited to the tax activities of the coconspirators, Evanson and Smith. Unlike the rest of the conspirators charged in this case, Taylor did not use Evanson's programs to reduce his personal tax obligations, nor did he have any substantial contact with Evanson's investors. Mr. Taylor's conduct and contact was limited to Evanson and Smith and their individual tax returns. Accordingly, based upon the superseding information and Taylor's Statement in Advance of Plea of Guilty, there should not be an adjustment under Section 2T1,9(b)(2).

Role in the Offense Adjustment Requested

Taylor's role in the offenses of Smith and Evanson should lead to a mitigating Role Adjustment under §3B1.2. The tax evasion behavior by Evanson and Smith was initiated by Evanson and Smith, both of whom, as described above, were sophisticated individuals. Evanson, who was also a lawyer, had a long history in commodities trading and offshore financial dealing. Smith literally wrote the book on financial derivatives and was the co-owner of an investment bank which created tax shelters of its own. Taylor's opinion letters were designed, at some potential point in the future, in the event of an audit, to be used to justify part of the financial structure and evade Evanson and Smith's personal tax liability. Taylor's opinions were not required to set up the structures[1], and ultimately were never presented to the government. Because the opinions were not used, and because Taylor, in effect withdrew them through his initiative, his role in the tax evasion of Evanson and Smith can surely be described as minimal and mitigated.

---

1 Although Taylor did assist Evanson in the creation of some of his entities.

Paragraphs 71 and 73

With regards to paragraphs 71 and 73, the defense would like to point to a host of additional reasons which converge to indicate why a departure or a variance is appropriate in this case. We will also be filing a separate motion to indicate why a variance is appropriate, prior to sentencing. This conduct is the aberrant behavior of a man who, until the boom of the tax shelter business in the late 1990s, was a well-respected lawyer, without any prior convictions. As a result of this offense, Taylor has lost his livelihood, and faces severe immigration consequences. Taylor's acceptance of responsibility has been extraordinary and he has also helped the government understand and explain tax shelters <u>that he was not involved in</u>. A comparison of Mr. Taylor's acceptance of responsibility and assistance to the government with the case of Steven Peterson, a key Evanson coconspirator, who received an 18-month sentence, demonstrates the appropriateness of a variance or a departure, to a probationary sentence in this case.

<u>Sentencing</u>

Section 3553(a) requires courts to, "Impose a sentence sufficient, but not greater than necessary, to comply with the four purposes of sentencing set forth in Section 3553(a)(2):

(a) Retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide "just punishment");

(b) Deterrence;

(c) Incapacitation ("to protect the public from further crimes"); and

(d) Rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

The sufficient-but-not-greater-than-necessary requirement is often referred to as the, "parsimony provision." The parsimony provision is not just another factor to be considered along

with the others set forth in Section 3553(a) – it sets an independent limit on the sentence a court may impose.

While neither Section 3553 itself nor <u>Booker</u> suggests that any one of the § 3553 factors is to be given greater weight than any other, it is important to remember that all factors are subservient to Section 3553(a)'s Mandate to Impose a Sentence Not Greater Than Necessary to Comply with the Four Purposes of Sentencing.

Here, all of the Section 3553 factors call out for a probationary sentence in this case.

These were nonviolent crimes which were not directed at individuals. To the contrary, both Smith and Evanson were extraordinarily sophisticated individuals. They would have carried out their own tax evasion schemes with or without Taylor's involvement. Taylor simply provided an ingredient for one part of the tax evasion recipe each man discovered on his own. What distinguishes Taylor from his co-defendants is that he came to his senses, causing him to withdraw early before the completion of the conspiracy. Although his withdrawal may have been too late to amount to a legal defense, it is a notable distinction between Taylor and the others charged with this conspiracy.

Taylor has already been substantially punished. He has been living under the cloud of a potential and then an actual indictment for almost 5 years. Although he has used his time wisely, he has been unable to plan for the future, because he does not know what his ultimate fate will be. The Supreme Court has recognized that a lengthy period under indictment is a real punishment for any person. Few men have spent five years as the subject of a government prosecution, and even fewer have done so much in that time to atone for their mistakes.

The same factors which have punished Taylor in this case will deter others in the future. He has lost his profession, income and his social standing. He faces real immigration

6

consequences. Although he is lucky to have a wife with a job who has supported him throughout his self induced ordeal, the change in status from the leading breadwinner to the supported one is always difficult, particularly when there is no real excuse for the change in circumstances.

Finally, the nature and circumstances of the offenses make it impossible for Taylor to re-offend. These offenses were inexorably related to his professional position, which he has now lost and will never again recover. Moreover his extraordinary cooperation in this case and other cases is the best proof that Taylor has learned from his mistakes and will never repeat them.

## Conclusion

Based upon the above reasons, and in addition to the materials provided by the government, Graham Taylor, through counsel, respectfully requests a variance from the guidelines and a sentence of probation in this case.

DATED: September 14, 2009.

/s/ Christopher J. Cannon
_____
CHRISTOPHER J. CANNON
Attorney for Defendant Graham Taylor

s/ G. Fred Metos
_____
G. FRED METOS
Attorney for the Defendant